Bernice NETTLES o/b/o Brandon
Nettles, Plaintiff,

v.

Kenneth S. APFEL, Commissioner
of Social Security, Defendant.

No. Civ.A.97–S–1480–N.

United States District Court,
M.D. Alabama,
Northern Division.

July 8, 1999.

John F. Cameron, Jr., Montgomery, AL, for plaintiffs.

R. Randolph Neeley, U.S. Atty's Office, Montgomery, AL, for defendant.

## MEMORANDUM OPINION

COODY, United States Magistrate Judge.

Bernice Nettles brings this action on behalf of Brandon Nettles pursuant to 42 U.S.C. § 405(g) seeking judicial review of a decision by the Commissioner of Social Security denying Supplemental Security Income under the Social Security Act.[1]

---

1. On August 22, 1996, President Clinton signed into law new legislation which amended certain provisions under Title XVI of the Social Security Act that relate to the sequential evaluation process for childhood SSI applications. *See Welfare Reform Act* at Title II, Subtitle B. Specifically, section 211(b)(2) of the Welfare Reform Act discontinued the individualized functional assessment for children set forth in sections 416.925d and 416.924e of title 20, Code of Federal Regulations. Also section 211(a)(2) of the new legislation also eliminated the term "comparable severity" from the definition of childhood disability. The new definition of childhood SSI disability provides that:

An individual under the age of eighteen (18) shall be considered disabled for the purposes of this title if that individual has a medically determinable physical or mental impairment which results in marked and severe functional limitations, and which can be expected to result in death, or which have lasted, or can be expected to last for a continuous period of not less that 12 months.

Because the new legislation adopts a stricter disability standard for Title XVI childhood SSI disability claims, *see Jamerson v. Chater*, 112 F.3d 1064 (9th Cir.1997), the court agrees with the Commissioner that it is not necessary to reevaluate claims that have been properly denied under the prior, more lenient regulations. The Commissioner, however, asks the court to remand this action for a new determination by an ALJ applying the new standard, in the event the court determines that the Keisha's claim was not properly denied under the prior standard.

Upon review of the record and the briefs submitted by the parties, the court concludes that the opinion of the Commissioner is due to be affirmed.

## FACTS

Brandon Nettles was nine years old at the time of the administrative hearing. The ALJ found that "Brandon has a severe impairment of developmental disorder NOS, but that he does not have an impairment or combination of impairments which meets or equals the criteria of any of the impairments listed in Part A or B of Appendix 1, Subpart P, Regulation No. 4." (TR. 18). The ALJ further found that plaintiff has less than moderate limitation in the communicative, motor, social, and personal/behavioral domains, and was moderately limited in only two categories; those of cognition, and concentration, persistence, and pace.[2] (TR. 13–17). The ALJ concluded that Brandon's impairments do not render him disabled under the Social Security Act.

Brandon's mother appealed the ALJ's decision to the Social Security Administration's Appeals Council, but the Council denied her request for review. She then filed this lawsuit seeking judicial review of the Commissioner's adverse decision.

## STANDARD OF REVIEW

The standard of review of the Secretary's decision is a limited one. This court must find the Secretary's decision conclusive if it is supported by substantial evidence. *Bridges v. Bowen*, 815 F.2d 622 (11th Cir.1987).

Despite this limited review, [the court] ... must scrutinize the record in its entirety to determine the reasonable-ness of the Secretary's factual findings ... No similar presumption of validity attaches to the Secretary's legal conclusions, including determination of the proper standards to be applied in evaluating claims.

*Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir.1987).

A reviewing court may not look only to those parts of the record which support the decision of the administrative law judge (ALJ) but instead must view the record in its entirety and take account of evidence that detracts from the evidence relied on by the ALJ. *Hillsman v. Bowen*, 804 F.2d 1179 (11th Cir.1986). The decision of the ALJ need not be supported by a preponderance of the evidence, but it cannot stand with a "mere scintilla" of support. *Id.* at 1181.

## DISCUSSION

The plaintiff challenges the Commissioner's adverse decision on six grounds: (1) the Commissioner erred in failing to find that Brandon had severe impairments of "specific learning disability" and severe discrepancies between his performance and/or achievement and his actual ability in basic reading and mathematics; (2) the Commissioner failed to credit Ms. Nettles' testimony at the hearing and failed to articulate explicit and adequate reasons for doing so; (3) the Commissioner failed to find that Brandon's condition meets the requirements of listing 112.05F.2; (4) the Commissioner failed to find that Brandon's condition meets the requirements of listing 112.05A; (5) the Commissioner failed to find that Brandon's condition meets the requirements of listing 112.05D; (6) the

2. The regulations in effect at the time of the hearing provide that if a child's impairments do not render her disabled under the Listing of Impairments, the Commissioner will do an individualized functional assessment to determine whether the child has impairments of comparable severity to those that would disable an adult. This assessment involves examining the child's functional and developmental domains; primarily, the child's cognition, communication, motor abilities, social abilities, personal/behavioral patterns, and her concentration, persistence, and pace in task completion. 20 C.F.R. § 416.924a; 416.924c. The precise domains examined depend upon the age of the child. § 416.924(e). A child is generally presumed disabled if she functions at a marked level in one domain *and* a moderate level in another domain; or, she is presumed disabled if she functions at a moderate level in three domains. 20 C.F.R. § 416.924(e).

Commissioner improperly failed to consider all of Brandon's impairments in combination. The court concludes, however, that the Commissioner's decision is due to be affirmed.

### 1. SEVERE IMPAIRMENTS

■■■ The plaintiff argues that the Commissioner erred in failing to find that Brandon had severe impairments of "specific learning disability"[3] and severe discrepancies between his performance and/or achievement and his actual ability in basic reading and mathematics. The court concludes that this argument is meritless because these impairments are not separate impairments, but rather are integral parts of the "developmental disorder NOS" diagnosis which was acknowledged by the ALJ. (TR. 18). Developmental disorder NOS is defined as a "learning disorder not otherwise specified." *Diagnostic and Statistical Manual of Mental Disorders (DSM–IV)*, 315.9 at p. 53. Furthermore, diagnosis 315.9 states "[t]his category might include problems in all three areas (reading, mathematics, written expression) that together significantly interfere with academic achievement even though performance on tests measuring each individual skill is not substantially below that expected given the person's chronological age, measured intelligence, and age-appropriate education." Thus, the court concludes that the ALJ's finding that plaintiff had a "developmental disorder NOS" encompassed plaintiff's "learning disability" and its manifestation of academic performance below the age and ability expected norm. The plaintiff's contention that these are three separate impairments is groundless.

### 2. CREDIBILITY OF MS. NETTLES' TESTIMONY

■■■ The plaintiff argues that the ALJ failed to credit Ms. Nettles' testimony at the hearing and failed to articulate explicit and adequate reasons for doing so. An ALJ may properly reject or disregard the subjective complaints or testimony of a claimant where he articulates explicit and adequate reasons for doing so. *Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987). The court concludes that the ALJ appropriately discussed Ms. Nettles' testimony in his decision and explicitly stated his reasons for discrediting portions of it.

The ALJ observed that Ms. Nettles' testimony about plaintiff's significant behavioral problems and lack of friends was inconsistent with her own statements on two separate questionnaires and the lack of medical attention or advice sought concerning plaintiff's behavioral problems. Specifically Ms. Nettles responded on two separate questionnaires that plaintiff did have friends around home or in the neighborhood, had friends at school as well, and got along fine with his mother, other adults, and his siblings at least half of the time or more. (TR. 15, 109–10 and 121–22). The ALJ further observed that none of plaintiff's teachers indicated he was a behavioral problem. (TR. 15–16). Indeed, the record reflects that plaintiff's first grade teacher reported that plaintiff interacted in a satisfactory and age appropriate manner and got along well with his classmates. (TR. 131–32). His second grade teacher reported that plaintiff was "liked by others, average for age and grade." (TR. 182). Plaintiff's third grade teacher reported that he got along with his classmates and was "quiet and well behaved." (TR. 215). Plaintiff's learning disability program teacher described him as imma-

---

**3.** This diagnosis was included in the conclusion of Dr. Randy Jordan's report which diagnosed plaintiff with "developmental disorder NOS (315.90)." (TR. 12, 176–77). The K-TEA test administered at plaintiff's school reached the same result, finding that plaintiff had a "specific learning disorder." (TR.

191). The plaintiff claims that the ALJ erred because he ignored the school records. This is not so. The ALJ noted based on Dr. Jordan's tests "and other test results, the claimant was placed [by his school] in a learning disability program." (TR. 13).

ture, but not a disciplinary problem. (TR. 211). Furthermore, plaintiff received straight A's for "conduct" in both the second and third grade. (TR. 208, 221). With regard to medical treatment, the ALJ observed that Ms. Nettles never mentioned behavioral problems to plaintiff's pediatrician and that she never sought psychological help for plaintiff until the week before the hearing, at which time she made an appointment for a mental evaluation later that month. (TR. 16, 31–32, 36). *See Wolfe v. Chater,* 86 F.3d 1072, 1078 (11th Cir.1996) (Conservative medical treatment is a factor which can support an ALJ's decision to discredit testimony regarding nonexertional impairments.) Accordingly, the court concludes that the ALJ did not err in discrediting Ms. Nettles' testimony.

### 3. SECTION 112.05F.2

 The plaintiff argues that his condition meets the "mental retardation" listing at 112.05F.2. The first prong of 112.05F.2 is

> *Marked* impairment in age-appropriate cognitive/communicative function, documented by medical findings (including consideration of historical and other information) from parents or other individuals who have knowledge of the child, when (such information is needed and available) and including, if necessary, the results of appropriate standardized psychological tests.

(Emphasis added). A "marked" limitation is defined as more than moderate, but less than extreme, and may arise when several activities or functions are impaired, or if one is impaired to a degree which seriously interferes with the ability to function (based on age-appropriate expectations) independently, appropriately, effectively, and on a sustained basis. Listing 112.00C Assessment of Severity, Appendix 1, Subpart P, Regulations No. 4. The second prong of 112.05F.2 is the existence of:

> a physical or other mental impairment imposing additional and significant limitations of function.

The ALJ concluded that the plaintiff had only moderate limitation of cognitive function and no limitation in the communicative domain (TR. 13–14). After an independent review of the record the court concludes that the ALJ's findings are supported by substantial evidence. With respect to plaintiff's communicative domain, the record reflects that although plaintiff's second grade teacher noted he had a limited vocabulary, he uses correct grammar and has adequate recall of words for his age and grade. (TR. 180). There is no other evidence of a communicative deficit. With respect to the cognitive domain, the plaintiff complains that the ALJ relied solely on his borderline IQ to find a moderate limitation in his cognitive domain. This is incorrect. The ALJ considered "other test results" referring to the K–TEA scores and that the plaintiff's school enrolled him in a "learning disability program" in reading and math, and modified his regular classes in science, social studies, and spelling. (TR. 13). Furthermore, the ALJ considered in some depth the assessments from plaintiff's teachers concerning his academic deficiencies and need for individualized attention. (TR. 13–14). Thus, the court concludes that the ALJ correctly found that plaintiff's learning disability was "moderate" in extent after considering all of the relevant evidence. Because the plaintiff had no "marked" limitation in age-appropriate cognitive/communicative function, the court concludes that plaintiff fails to satisfy the first prong of 112.05F.2.

With respect to the second prong of 112.05F.2, the court concludes for the reasons set out in Section 1. above that the evidence supports the ALJ's finding that plaintiff has only one mental impairment, developmental disorder NOS (315.90). Furthermore, there is no evidence of a physical impairment. Thus, plaintiff also fails to satisfy the second prong of 112.05F.2. Accordingly, the court concludes that the ALJ did not err in failing to find that plaintiff met listing 112.05F.2.

### 4. SECTION 112.05A

The plaintiff argues that the ALJ erred in failing to find that Brandon's impairments met the mental retardation listing at 112.05A. This listing requires a finding of a "marked" impairment in at least two of the following areas: age-appropriate cognitive/communicative functioning, age-appropriate social functioning, age-appropriate personal/behavioral functioning, and deficiencies of concentration, persistence or pace resulting in frequent failure to complete tasks in a timely manner. The plaintiff claims that he has a "marked" impairment in both age-appropriate cognitive/communicative function and deficiencies of concentration, persistence, or pace. For the reasons discussed above in Section 4. the court concludes that the ALJ did not err in finding plaintiff had only a moderate impairment in cognitive/communicative function. Accordingly, the court concludes that the plaintiff does not meet listing 112.05A.

### 5. SECTION 112.05D

 The plaintiff contends that the ALJ erred in failing to find that Brandon's impairments meet or equal the impairment listed in Section 112.05D. Section 112.05D provides, in pertinent part, that

A claimant will meet the criteria of Section 112.05D if he presents evidence of:

(a) a valid verbal, performance, or full scale IQ of 60 through 70; and

(b) a physical *or other* mental impairment imposing additional and significant limitations of function.

20 C.F.R. Part 404, Subpart P, Appendix 1, Section 112.05 (1997) (Emphasis added).

In May 1994 plaintiff achieved a verbal IQ of 92, a performance IQ of 74, and a full scale IQ of 82 on a WISC–R test performed by Dr. Randy Jordan, consultative psychologist. Thus, plaintiff does not meet the requirement of section (a). Furthermore, under the express language of section (b), the plaintiff is required to present evidence of a physical impairment or a mental impairment *in addition to* his developmental disorder NOS. The plaintiff does not allege he suffers from a physical impairment and for the reasons discussed above in Section 1. the court concludes that there is no evidence that he suffers from a mental impairment in addition to developmental disorder NOS. Thus, the court concludes that the ALJ did not err in failing to find that plaintiff met Section 112.05D.

 The plaintiff further claims that the ALJ erred in failing to obtain additional medical expert assistance to determine whether his condition equaled the listing at 112.05D. In making an equivalency determination, an ALJ may properly rely on the opinion of non-examining physicians who reviewed the medical evidence and the regulations. *See Wilkinson v. Bowen,* 847 F.2d 660, 663 (11th Cir.1987). In the instant case, Kenneth Warren, Ph.D., a consultative psychologist with the State Agency, reviewed plaintiff's case and determined that his condition did not meet or equal any listed impairment. (TR. 77). Accordingly, the court concludes that the plaintiff's argument lacks merit.

### 6. IMPAIRMENTS IN COMBINATION

The plaintiff contends that the ALJ failed to consider his impairments in combination. For the reasons stated in Section 1. above, the court concludes that plaintiff suffers from a single impairment, developmental disorder NOS (315.90). Thus, the plaintiff's argument lacks merit.

A separate order will be entered.

### ***ORDER***

In accordance with the memorandum opinion entered herewith, it is

ORDERED AND ADJUDGED that the decision of the Commissioner be and hereby is AFFIRMED and that this case be and hereby is DISMISSED with prejudice.