[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

————————————————

No. 22-10676

Non-Argument Calendar

————————————————

CHRISTOPHER RYAN LESLIE,

Plaintiff-Appellant,

*versus*

COMMISSIONER, SOCIAL SECURITY ADMINISTRATION,

Defendant-Appellee.

————————————————

Appeal from the United States District Court
for the Northern District of Alabama
D.C. Docket No. 4:20-cv-00512-CLM

————————————————

Before ROSENBAUM, JILL PRYOR, and GRANT, Circuit Judges.

PER CURIAM:

Christopher Leslie disagrees with the Commissioner of Social Security's determination that he is not disabled.  His applications for a period of disability, disability insurance benefits, and supplemental security income were denied and the district court affirmed.  Leslie now argues that the administrative law judge (ALJ) who presided over his hearing gave insufficient weight to the opinion of Dr. June Nichols, Psy.D, and that the ALJ's finding that Leslie had residual functional capacity to perform a full range of work with no exertional limitations was not supported by substantial evidence.  He also argues that the district court gave a post hoc rationalization for the ALJ's decision.  Because Leslie has failed to show that the ALJ's decision was not supported by substantial evidence, we affirm.

I.

Leslie applied for benefits in February 2017, claiming that his epilepsy and depression had made him unable to work since October 12, 2016.  He previously worked at a restaurant, a lumber yard, and Walmart, but he testified that he stopped working after he started having seizures at work.

In April 2017, Leslie was referred by Disability Determination Services to Dr. Nichols, who conducted a disability determination evaluation of Leslie.  The evaluation provided

mixed evidence on Leslie's mental and emotional capabilities. On the one hand, Dr. Nichols noted many things that suggested that Leslie retains significant mental and emotional capacity. For example, Leslie presented as neat and clean, he described visiting with friends, and he successfully completed several tasks showing basic concentration and memory skills, such as counting from 20 to 1 in 20 seconds, spelling "world" backward, performing addition and subtraction, recalling three objects after a ten-minute period, and providing his personal story in detail. On the other hand, Dr. Nichols detailed Leslie's self-described history of depression, abuse, and struggles with formal education. She opined that Leslie's anxiety, depression, and learning disabilities would impair his "ability to respond to supervision, to coworkers and to work pressures in a work setting" and that he would struggle to "remember, understand, and carry out work related functions." Dr. Teresa Moran, M.D., then reviewed the record and gave her opinion that Leslie could work with some limitations in May 2017.

Leslie's application was denied in May 2017, and he requested and received a hearing before an ALJ. In February 2019, after a hearing, the ALJ determined that Leslie was not disabled and denied his application. The ALJ cited Leslie's medical records showing many normal physical functions; evidence showing that Leslie could perform some multistep activities; evidence from Leslie's daily life about his ability to maintain friendships, prepare meals, and care for himself; the opinion of Dr. Moran; elements of Dr. Nichols's examination; and other evidence in the record.

4                    Opinion of the Court                    22-10676

The ALJ concluded that "the overall evidence of the record is inconsistent with the claimant's allegations of totally incapacitating symptomatology." The ALJ instead determined that Leslie had the residual functional capacity to perform a full range of work at all exertional levels with several nonexertional limitations. These nonexertional limitations included a finding that Leslie cannot be exposed to hazardous machinery or drive commercially, a finding that Leslie can perform simple and repetitive tasks but not detailed or complex tasks, and a finding that Leslie can tolerate occasional contact with coworkers and the public but should deal primarily with things and not people. Based on Leslie's residual functional capacity and limitations, the ALJ determined that Leslie could adapt to work as a dishwasher, a cleaner, or a cook helper.

As part of his evaluation of the medical and non-medical evidence of Leslie's mental impairments, the ALJ discussed the opinions of Drs. Moran and Nichols. The ALJ considered and gave partial weight to Dr. Moran's opinion, agreeing with some but not all of her proposed limitations on Leslie's ability to work. And the ALJ considered and gave little weight to Dr. Nichols's opinion, determining that her opinion was "broad" and did not "note specific function-by-function limitations."

The Appeals Council declined to review the ALJ's determination. That brought Leslie to the district court, which affirmed the ALJ. This is Leslie's appeal.

## II.

Because the Appeals Council declined to review the ALJ's decision, we review the ALJ's ruling as the final decision of the Commissioner. *Viverette v. Comm'r of Soc. Sec.*, 13 F.4th 1309, 1313 (11th Cir. 2021). When the Commissioner denies benefits, we ask whether the Commissioner's decision is supported by substantial evidence, with de novo review of conclusions of law. *Id.* at 1313–14. "Substantial evidence is less than a preponderance, but rather such relevant evidence as a reasonable person would accept as adequate to support a conclusion. Nevertheless, substantial evidence requires more than a scintilla." *Id.* at 1314 (quotations omitted). Under this limited standard of review, we will not make factual findings or credibility determinations in the first instance or re-weigh evidence. *Id.*

A claimant must be disabled to be eligible for disability insurance benefits and supplemental security income. *See* 42 U.S.C. §§ 423(a)(1)(E), 1382(a)(1)-(2).[1] Social Security regulations outline a five-step process that the ALJ must use to determine whether a claimant is disabled, with an intermediate step that determines the claimant's residual functional capacity. *See* 20 C.F.R. §§ 404.1520, 416.920. Like the district court, we think that this five-step process is easiest to understand with a chart:

---

[1] Supplemental security income is also available for the aged and blind, but Leslie does not claim to be either aged or blind. *See* 42 U.S.C. § 1382.

| The 5-Step Test | | |
|---|---|---|
| Step 1 | Is the claimant engaged in substantial gainful activity? | If yes, claimant is not disabled. If no, proceed to Step 2. |
| Step 2 | Does the claimant suffer from a severe, medically-determinable impairment or combination of impairments? | If no, claimant is not disabled. If yes, proceed to Step 3. |
| Step 3 | Does the Step-2 impairment meet the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appx. 1? | If yes, claimant is disabled. If no, proceed to Step 4. |
| *Determine Residual Functional Capacity* | | |
| Step 4 | Does the claimant possess the residual functional capacity to perform the requirements of his past relevant work? | If yes, claimant is not disabled. If no, proceed to Step 5. |
| Step 5 | Is the claimant able to do any other work considering his residual functional capacity, age, education, and work experience? | If yes, claimant is not disabled. If no, claimant is disabled. |

See id.; see also Viverette, 13 F.4th at 1312–13; Leslie v. Kijikazi, 2022 WL 19648, at *1 (N.D. Ala. Jan. 3, 2022).

As part of the ALJ's evaluation, the ALJ considers medical opinions about the claimant from acceptable medical sources.

"The ALJ must state with particularity the weight given to different medical opinions and the reasons therefor." *Buckwalter v. Acting Comm'r of Soc. Sec.*, 5 F.4th 1315, 1320-21 (11th Cir. 2021) (quotation omitted).  To meet this standard, the ALJ need not "cite every piece of evidence in the record" but must demonstrate that he "considered the claimant's medical condition as a whole." *Id.* at 1326.  The ALJ must "state with at least some measure of clarity the grounds for his decision." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011) (quotation omitted).

For claims filed before March 27, 2017, ALJs are to treat the opinions of treating physicians (who have an ongoing medical relationship with the claimant) and non-treating physicians (who provide one-off consultative opinions about the claimant) differently.[2]  For these claims, a treating physician's opinion is entitled to "substantial or considerable weight unless there is good cause to discount" it. *Simon v. Comm'r, Soc. Sec. Admin.*, 7 F.4th 1094, 1104 (11th Cir. 2021) (quotations omitted).  But a non-treating physician's opinion based on a single examination is "not

---

[2] In 2017, the Commissioner of Social Security eliminated the distinction between treating and non-treating physicians. *Harner v. Soc. Sec. Admin., Comm'r*, 38 F.4th 892, 897 (11th Cir. 2022) (citing 82 Fed. Reg. 5,844, 5,853 (Jan. 18, 2017)). But these amendments did not apply to any claims filed before March 27, 2017. *See id.*; 82 Fed. Reg. 16,869, 16,869 (Apr. 6, 2017).  Because Leslie applied for his benefits in February 2017, this opinion describes the pre-2017 regulations.  We do not address the standard under the new regulations.

entitled to great weight." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1160 (11th Cir. 2004).

### III.

At the intermediate step of the disability determination process, the ALJ found that Leslie had the residual functional capacity to do a full range of work at all exertional levels with nonexertional limitations. Leslie disputes this finding for two reasons. *First*, Leslie argues that the ALJ erred by giving little weight to the opinion of Dr. Nichols, the Commissioner's consulting physician. *Second*, Leslie argues that the ALJ's finding that he could work at full capacity without exertional limitations was not supported by substantial evidence. We address these two arguments in turn.

### A.

Leslie's primary argument that the ALJ gave Dr. Nichols's opinion too little weight relies on the Seventh Circuit's decision in *Wilder v. Chater*, 64 F.3d 335 (7th Cir. 1995). In *Wilder*, the Seventh Circuit applied a "degree of suspicion to the administrative law judge's decision to go against the only medical evidence in the case" when that evidence was "the only direct testimony concerning the critical issue." *Id.* at 337. Leslie argues that this Court should likewise apply a "degree of suspicion" to the ALJ's decision to give little weight to Dr. Nichols's opinion, especially given that Dr. Nichols's opinion was the "only evidence by an examining mental health professional."

Dr. Nichols's opinion was not entitled to the deference that Leslie asserts. Dr. Nichols was a non-treating physician.[3] This Circuit has held that the opinions of non-treating physicians based on a single examination are "not entitled to great weight." *Crawford*, 363 F.3d at 1160. Of course, the ALJ's decision to discount the opinion must still be supported by substantial evidence. But under *Crawford*, we do not apply elevated scrutiny to the ALJ's decision to give little weight to Dr. Nichols's opinion. And even if *Wilder* were the law in this Circuit, we doubt that it would apply here, where the physician's opinion is not "the only medical evidence in the case." *Wilder*, 64 F.3d at 337.

Leslie appears to make three other arguments that the ALJ's decision to give little weight to Dr. Nichols's testimony was not supported by substantial evidence: (1) He argues that the ALJ failed to state with at least "some measure of clarity" the grounds for repudiating the examining physician's opinion; (2) He argues that the ALJ substituted his judgment for Dr. Nichols's medical expertise; and (3) He argues that the ALJ should have contacted Dr. Nichols for clarification about the basis of her opinion before giving it little weight.

---

[3] Leslie cites some cases interpreting the treating physician rule rather than the non-treating physician standard described by this Court in *Crawford*. *See, e.g.*, *Hillsman v. Bowen*, 804 F.2d 1179, 1182 (11th Cir. 1986). These cases do not apply to the ALJ's decision to give little weight to the opinion of Dr. Nichols, a non-treating physician, and we do not consider them.

We are not persuaded by any of these arguments. After documenting record evidence about Leslie's mental and emotional capabilities, the ALJ explained that he considered and gave little weight to the opinion because it was "broad" and did "not note specific function-by-function limitations" before finding the "overall evidence of the record" to be "inconsistent with the claimant's allegations of totally incapacitating symptomatology." Although Leslie repeatedly asserts that the ALJ's explanation failed to provide "some measure of clarity," he never explains what is unclear about that analysis. To the contrary, we conclude that it is appropriately clear.

Likewise, while we agree with Leslie that an ALJ may not take on the role of doctor, the "final responsibility for deciding" the residual functional capacity is "reserved to the Commissioner," not an examining physician. 20 C.F.R. § 404.1527; *see also* 20 C.F.R. § 404.1546(c) (giving the ALJ responsibility for assessing residual functional capacity); *Watson v. Heckler*, 738 F.2d 1169, 1172 (11th Cir. 1984) (discussing how an ALJ necessarily must resolve conflicting medical evidence). By weighing conflicting evidence, the ALJ stayed within his role.

And while Leslie provides several non-precedential cases in which ALJs were admonished to investigate evidence further rather than accept a seemingly anomalous conclusion, he provides no support for the idea that an ALJ *must* follow up with *every* non-treating physician's opinion before giving that physician's opinion little weight—nor does he attempt to reconcile that proposition

with *Crawford*'s holding that non-treating physicians' opinions are "not entitled to great weight." 363 F.3d at 1160. We do not second-guess the ALJ's decision to rely on the evidence that was already in the record. *See also* 20 C.F.R. § 404.1520b(b) (stating that the Commissioner might, but also might not, recontact medical sources *if* there is insufficient existing evidence to make a disability determination).

## B.

Leslie also claims that the ALJ's finding that he had the residual functional capacity to perform a full range of work at all exertional levels was not supported by substantial evidence. Here, we interpret Leslie as making two distinct arguments. *First*, Leslie claims that the ALJ's finding is contradicted by both the ALJ's own determination that Leslie cannot perform past work and by Dr. Nichols's evaluation. *Second*, Leslie claims that the ALJ erred because he did not find that Leslie would be able to hold onto a job.

Again we are not persuaded. Leslie cites evidence in the record that would have provided some support for a finding that he is disabled. But he does not engage with the ALJ's nonexertional limitations on Leslie's residual functional capacity—such as a finding that Leslie cannot be exposed to hazardous machinery and commercial driving, a finding that Leslie can perform simple and repetitive tasks but not detailed or complex tasks, and a finding that Leslie can tolerate occasional contact with coworkers and the public but should deal primarily with things and not people. Nor does Leslie engage with the evidence of his capacity to continue

working—like his medical records showing many normal physical functions; the evidence showing that Leslie could perform some multistep activities; and the evidence from Leslie's daily life about his ability to maintain friendships, prepare meals, and care for himself—all of which contributed to the ALJ's determination that "the overall evidence of the record is inconsistent with the claimant's allegations of totally incapacitating symptomatology." The record shows conflicting evidence, and the ALJ grappled with that evidence to reach a nuanced determination.

Leslie may think that the ALJ should have weighed the evidence differently, but we are reviewing the ALJ's determination for whether it is supported by substantial evidence. We cannot reweigh the evidence under this deferential standard. *See Viverette*, 13 F.4th at 1314.

As for Leslie's argument that the ALJ failed to determine that Leslie could keep a job, Leslie only relies on out-of-circuit authority. *See Singletary v. Bowen*. 798 F.2d 818 (5th Cir. 1986). And in any event, the circuit in question has since clarified that an ALJ's finding that a claimant can work is generally presumed to include a finding that the claimant can keep his job. *See Frank v. Barnhart*, 326 F.3d 618, 619 (5th Cir. 2003).[4]

---

[4] If Leslie instead intended to argue that—even if a factual finding that Leslie had the residual functional capacity to *get* a job would be supported by substantial evidence—a factual finding that Leslie could *keep* a job would not be, then he never developed that argument and therefore abandoned it. *See Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 681–82 (11th Cir. 2014).

## IV

Leslie independently argues that the district court provided an impermissible post hoc justification for the ALJ's decision in violation of the rule that agency actions must be supported by the rationale given at the time of the agency's decision. *See generally SEC v. Chenery Corp.*, 318 U.S. 80 (1943). This argument misunderstands this Court's role. Our "review is the same as that of the district court," so we "neither defer to nor consider any errors in the district court's opinion." *Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 (11th Cir. 2015) (quotation omitted). In other words, we directly review the Commissioner's decision; we do not evaluate the reasoning of the district court. Regardless, the district court correctly noted that the ALJ explained his discounting of Dr. Nichols's opinion and that the ALJ evaluated the medical evidence in the record, including Dr. Nichols's opinion.

\*     \*     \*

Leslie has failed to show that the ALJ's discission was not supported by substantial evidence. We therefore **AFFIRM** the judgment of the district court.

---

Perhaps medical evidence would show that Leslie's seizures prevent him from keeping full-time work, as Leslie's counsel appeared to suggest when asking a hypothetical of the vocational expert during the hearing. But Leslie abandoned that argument by not briefing it to this Court or the district court, so we do not consider it.